Aaron M. LAVIN

v.

DATA SYSTEMS ANALYSTS, INC.,
et al.

Civ. A. No. 76–2763.

United States District Court,
E. D. Pennsylvania.

Sept. 29, 1977.

Mitchell A. Kramer, Philadelphia, Pa., for plaintiff.

Astor & Welss, Philadelphia, Pa., for individual defendants.

Goldman & Goldman, Philadelphia, Pa., for Data Systems.

## OPINION AND ORDER

A. LEON HIGGINBOTHAM, Jr., District Judge.

### I.

On February 24, 1975 the Board of Directors of Data Systems Analysts, Inc. (hereinafter Data Systems), a Delaware corporation, adopted an employee bonus program under which up to 40% of the corporation's pre-tax profits would be distributed each year as bonuses ". . . to such key personnel as shall be determined by a committee established by the Board of Directors. . . ." Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, Aaron Lavin, a holder of Data Systems securities, has brought this derivative action against several of the corporation's executives and directors,[1] alleging that by enacting the employee bonus program these defendants violated Section 10(b) and Rule 10b–5, of the 1934 Securities

---

1. Plaintiff has named the following corporate officers as defendants:

   1. Charles H. Margolin, President & Chairman of the Board of Data Systems;
   2. Joseph V. McFadden, Vice President and Member of the Board;

3. Thomas N. Scambia, Vice President and Member of the Board;
4. Charles I. Seeley, Vice President and Member of the Board;
5. Jon Lisitski, Member of the Board; and
6. G. Roy Morris, Member of the Board.

Act[2] and Title 8, Section 144 of the Delaware Corporation Law. Additionally, plaintiff claims that the defendants have breached their fiduciary duty and have committed common law fraud. Jurisdiction is alleged under Section 27 of the 1934 Securities Act.[3]

Presently before this Court are defendants' joint motions to dismiss the complaint under Fed.R.Civ.P. 12(b) and (c) and for a Protective Order under Fed.R.Civ.P. 26(c)(2). For the reasons herein stated, defendants' motion to dismiss is GRANTED; as the complaint has been dismissed there is no need to rule on the Motion for Protective Order.

The details of the challenged employee bonus program can be briefly stated. Under the program, the Board of Directors appoints a committee to annually select those key personnel who would receive some portion of Data Systems pre-tax profits. The Board was authorized to distribute up to 40% of the corporation's profits each year. The actual percentage of the pre-tax profits to be distributed is determined each year by the Board. The purpose of the program, as stated by Donald J. Bezahler, Secretary of Data Systems, in the April 23, 1975 notice of the Annual Stockholders Meeting, is to ". . . attract and retain the service of key personnel . . .", in an effort to expand and develop Data Systems' business operations. Approximately twenty employees, including officers, were found eligible for the bonus as of April 23, 1975. [Complaint, Exhibit C, pp. 4, 5].[4]

During the annual meeting of May 15, 1975 the program was submitted to and approved by the stockholders. [Complaint, pp. 4–5].

Plaintiff contends that the Board of Directors (defendants herein) owned or controlled a majority of Data Systems' common stock at the time of the May 16, 1976 annual meeting[5] and continue to hold such

2. 15 U.S.C. § 78j(b);  17 C.F.R. § 240.10b–5.

3. 15 U.S.C. § 78aa.

4. In 1975 Charles H. Margolin, President and Chairman of the Board, received an $8,000.00 bonus; $2,387.00 was contributed to pension and profit sharing plans. Joseph V. McFadden, Vice President, received a $7,000.00 bonus, plus a $2,010.00 contribution to pension and profit sharing plans. Six other directors received as a group a total of $25,550.00 in bonuses and $10,397.00 in pension and profit sharing contributions. Plaintiff's Exhibit E, *Notice of Annual Meeting of Stockholders,* April 23, 1976, p. 3.

5. *Defendants' Stock Ownership As of April 23, 1975*

| Name | Position with Company and Principal Occupation | Shares of Company's Common Stock Beneficially or of Record Owned April 11, 1975 |
| --- | --- | --- |
| Charles H. Margolin | Chairman of the Board since August 1969; President since September 1972 and from March 1968 to August 1969; Director since March 1968; associated with the Company and its predecessors as President since its inception in 1963. | 109,270 (a) |
| Joseph V. McFadden | Director since March 1968; associated with the Company and its predecessors since 1963. | 34,100 |
| Thomas N. Scambia | Vice President and Director since March 1968; associated with the Company and its predecessors since 1963. | 69,000 |
| Charles I. Seeley | Vice President and Director since March 1968; associated with the Company and its predecessors since 1963. | 50,540 |
| Jon Lisitski | Systems Analyst since May, 1968 and Project Leader since July, 1969 with the Company. | 35,220 |
| J. Roy Morris | Chairman of the Board and President since April 1968 of Cybermatics Inc. engaged in graphic products and services. | None (b) |

a majority.[6] Plaintiff argues that the sole purpose of the employee bonus plan was to benefit the individual defendants, and, therefore, the program constitutes "a fraud or deceit upon Data [Systems] and its shareholders." [Complaint, p. 5].

It is further alleged that defendants failed to disclose to stockholders that the program involved what, in plaintiff's view, is self-dealing, conflict of interest and utilization of corporate funds for strictly personal benefit. Such alleged nondisclosures form the gravamen of the § 10(b) claim.

I find that plaintiff has failed to state a cause of action under Section 10(b) and Rule 10b–5. It is therefore unnecessary to discuss defendants' other contentions.

Defendants have submitted the affidavit of Donald J. Bezahler in support of their argument that venue in the Eastern District of Pennsylvania is improper and have moved for dismissal of the complaint under Rule 12(c).

For purposes of this motion, however, I will exclude this affidavit from the record, and will treat this motion as one to dismiss under Rule 12(b)(6). I will therefore consider only the pleadings and memoranda in support thereto.

## II.

■ It is axiomatic that a court, in considering a motion to dismiss for failure to state a cause of action under Rule 12(b)(6), ". . . will consider as admitted, viewing the same in the light most favorable to plaintiff, all facts contained in the complaint and every inference fairly deductible therefrom," *Melo-Sonics Corporation v. Cropp*, 342 F.2d 856, 858–859 (3d Cir. 1965). *Accord Husbands v. Commonwealth of Pennsylvania*, 359 F.Supp. 925, 929 (E.D.Pa. 1973). A motion to dismiss must be granted, however, if it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts which could be proved in support of his claim. *Jenkins v. McKeithen*, 395 U.S. 411, 421–422, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1963); *Husbands v. Commonwealth of Pennsylvania, supra; Frederick Hart & Co. v. Recordgraph Corporation*, 169 F.2d 580, 581 (3d Cir. 1953).

Plaintiff's allegations fail to state a cause of action under Section 10(b) and Rule 10b–5 on two grounds. First, there has been no "manipulative or deceptive" conduct. And, second, even if there were, it was not "in connection with the purchase or sale of securities."

## III.

■ Section 10(b) prohibits the use of "any manipulative or deceptive device or contrivance" in contravention of the rules of the Securities and Exchange Commission. The Supreme Court has recently held that a cause of action under Rule 10b–5 exists "only if the conduct alleged can be fairly viewed as 'manipulative or deceptive' within the meaning of the statute." *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 1301, 51 L.Ed.2d 480 (1976). The

---

\* \* \* \* \* \*

(a) Includes 45,000 shares held in trust by Mr. Margolin for his children, beneficial ownership of which is disclaimed by Mr. Margolin. The 109,270 shares owned by Mr. Margolin and the trust comprise approximately 12% of the outstanding Common Stock of the Company.

(b) Mr. Morris is President of Cybermatics Inc., the record owner of 165,000 shares, or approximately 18.7% of the outstanding common stock of the Company. He is the owner of approximately 182,228 shares, or approximately 16.6%, of the outstanding common stock of Cybermatics. Of the latter amount, Mr. Morris disclaims beneficial ownership of a total of 8,225 shares held in trust for his children. No other officer or director of the Company owns shares of Cybermatics common stock, although the Company itself owns 10,000 such shares.

6. Plaintiff's Response to Defendants' Joint Motion to Dismiss, p. 3. Defendants dispute plaintiff's assertion that the individual defendants own a majority interest in the corporation. For purposes of this motion, however, the court has accepted plaintiff's assertions as true.

defendants' conduct in the implementation of the bonus program was neither manipulative nor deceptive.

Plaintiff's allegations of deception are as follows:

Data has failed to disclose any proxy statements, annual reports, or other documents, that the Program involved self-dealing, conflict of interest, and utilization of corporate funds for strictly personal benefit, or that the Program was devoid of a legitimate or justifiable corporate purpose. Data further failed to disclose that bonuses under the Program would be given primarily to Officers and Directors of Data and that, as holders of a majority of the common stock of Data, they were, in effect, able to approve the Program regardless of the vote of the outside shareholders.

[Complaint, pp. 5–6].

None of the omissions alleged by plaintiff are material. Another district court has made the following statement about allegations of directors' improper motives:

[I]t is bemusing, and ultimately pointless, to charge that directors perpetrated a "material omission" when they failed to (a) discover and adjudge faithless motives for their actions and (b) announce such a discovery in reporting the products of their managerial efforts and judgment. The securities laws, while their central insistence is upon disclosure, were never intended to attempt any such measures of psychoanalysis or reported self-analysis. The unclean heart of a director is not actionable, whether or not it is "disclosed," unless the impurities are translated into actionable deeds or omissions both objective and external.

*Stedman v. Storer*, 308 F.Supp. 881, 887 (S.D.N.Y.1969).

The April 23, 1975 Notice of the Annual Meeting, which has been incorporated into the Complaint, informs the shareholders of the plan's purpose, the maximum percent-age of pre-tax profits that the Board could use for the plan, the body that would select the personnel who would receive these bonuses and, finally, that officers and directors are eligible for such bonuses. As of April 23, 1975 only two facts were undisclosed: one, the specific personnel who would receive the bonuses; and two, the dollar amounts of this bonus.

In *Abramson v. Nytronics, Inc.*, 312 F.Supp. 519 (S.D.N.Y.1970), the court addressed itself to the disclosures required by Rules 14a–9 and 10b–5 for proxy materials. The same standards are applicable in this context. The court here stated:

Defendant-directors were obligated to make a full and fair disclosure of those facts which a stockholder would need in order to make an intelligent and informed decision on Gulton's proposed purchase of its shares. They were not, however, required to present to the Gulton shareholders all the arguments that could be made against their recommendations. The proxy provisions of Rules 14a–9 and 10b–5 are aimed at *disclosure of all material facts*, not at ensuring an exhaustive, dispassionate, and evenly balanced presentation of conflicting interpretations of the facts given.

*Abramson, supra*, at 524. I find that Data Systems shareholders received all the information necessary to make an informed decision. The defendants' conduct, therefore, was not deceptive.

I also find that it was not manipulative. Manipulation, in the securities law context, "refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." *Santa Fe, supra*, 430 U.S. at 476, 97 S.Ct. at 1302. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976). The Supreme Court has specifically excluded corporate mismanagement involving unfair treatment of shareholders by a fiduciary from its definition of manipulation. *Santa Fe, supra*, 430 U.S. at 475, 97

S.Ct. at 1302. Plaintiff's complaint makes no allegations that the defendants intended to affect the market activity of Data Systems' stock.

Thus, plaintiff's complaint should be dismissed because it fails to properly allege the "manipulative or deceptive" conduct necessary to a 10b–5 cause of action.

## IV.

An alternative basis for dismissing the complaint is the absence of connection between the alleged misconduct and the purchase or sale of any security as required by Section 10(b) and Rule 10b–5.

Plaintiff contends that three security transactions meet this requirement: 1) the purchase of 5,000 shares by Data Systems of its own stock [Plaintiff's Response to Defendants' Motion to Dismiss, p. 9], 2) another purchase of 165,000 shares of its own stock by Data Systems [Id.] and 3) the enactment of the bonus program itself [Id., 9, 10]. The first two transactions, although clearly purchases of securities, are not sufficiently connected with defendants' alleged misconduct. The third transaction fails because the bonus program is not a security within the meaning of the statute.

Although it is impossible to state precisely how much or what type of connection must exist between the purchase and the alleged misconduct, at the very least, "the securities transaction must have played some part in the overall fraudulent scheme." *Bolger v. Laventhol, Krekstein, Horwath & Horwath*, 381 F.Supp. 260, 267 (S.D.N.Y.1974). *See Herpich v. Wallace*, 430 F.2d 792, 808–809 (5th Cir. 1970). The Court of Appeals for this circuit has recently stated, "the 'purchase or sale requirement' . . . contemplates a causal connection between the alleged fraud and the purchase or sale of stock." *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 194 (3d Cir. 1976). *See Landy v. F.D.I.C.*, 486 F.2d 139 (3d Cir. 1973). Here, plaintiff's complaint makes no allegation that either purchase of stock was caused or in any way affected by the alleged misconduct. Plain-

tiff's counsel does argue in response to this Motion to Dismiss that the purchases were an integral part of the fraudulent scheme. Plaintiff's reasoning is as follows: "By having Data purchase large portions of stock, which is non-voting, defendants increased their percentage of the outstanding, voting stock, thereby guaranteeing that no other shareholder group could upset their plan." [Plaintiff's Response to Defendants' Motion to Dismiss, p. 10]. I fail to perceive how the purchase of these shares could substantially contribute to the alleged scheme since, according to plaintiff's complaint, the Board already held the majority of the shares. [Complaint, p. 4]. This conclusion is strengthened by the fact that the 165,000 shares were purchased from a corporation whose president was one of the defendants. [Plaintiff's Exhibit E, Notice of Annual Meeting of Stockholders, April 23, 1976, p. 3].

Plaintiff quotes language from *SEC v. General Refractories*, 400 F.Supp. 1248, 1257 (D.D.C.1975), in support of its argument that "[t]he fact that major securities purchases were made in the same general time frame as the alleged fraudulent conduct is sufficient for a 10b–5 claim." [Plaintiff's Response to Defendants' Motion to Dismiss, p. 9]. In that case, however, and in the other cases cited by plaintiff on this point, there was some omission or misrepresentation that may have changed the particular purchase decision involved. Here, there is no reasonably possible causal connection between the alleged misconduct and the stock purchases.

Plaintiff also claims that the implementation of the bonus program itself constitutes the sale of a security. Plaintiff relies on the following language in 15 U.S.C. § 78c(a)(10) defining a security as "any . . . certificate of interest or participation in any profitsharing agreement." I find, however, that the plan here was not the type of agreement contemplated by the statute and is not a security.

In determining what is a security, "form should be disregarded for substance and the

emphasis should be on economic reality." *Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967). I am guided in my interpretation both by the purposes of the statute and by previous judicial learning on the meaning of a "security." The securities acts were primarily enacted "to provide investors with full disclosure of material information" and "to protect investors against manipulation of stock prices through regulation of transactions upon securities exchanges and in over-the-counter markets . . . ." *Ernst & Ernst, supra,* 425 U.S. at 195, 96 S.Ct. at 1384.

The Supreme Court has stated:

What distinguishes a security transaction . . . is an investment where one parts with his money in the hope of receiving profits from the efforts of others. . . . *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 858, 95 S.Ct. 2051, 2063, 44 L.Ed.2d 621.

*See SEC v. Howey,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); *Lino v. City Investing Co.,* 487 F.2d 689 (3d Cir. 1973).

The bonus program merely gave the committee appointed by the Board of Directors the power to disperse such funds as the Board, in its discretion, makes available. The plan is, in no sense, an investment upon which there can be capital appreciation and no employee receives any rights to income other than that allotted each year by the committee. I find that the certificate of participation mentioned in the statute refers to instruments that give the holder at least some rights to future profits. Thus, I find that the bonus program does not constitute a security and that, therefore, there has been no purchase or sale of a security in connection with the alleged fraudulent scheme.

## V.

In sum, I find that the abuses that the 1934 Act was intended to combat are not present in this case. Since I am dismissing plaintiff's 10b–5 claims, no substantial federal claims remain upon which to premise pendent jurisdiction over the state law claims. *Tully v. Mott Supermarkets,* 540 F.2d 187, 196 (3d Cir. 1976). Therefore, the state claims are dismissed without prejudice to plaintiff's rights to litigate those claims in an appropriate forum.