**Shirley KIMMEY et al.**

**v.**

**H. A. BERKHEIMER, INC.,**
**and**
**Lewis Dreisbach.**

**Charles WATSON et al.**

**v.**

**John W. HULME et al.**

**Civ. A. No. 72–1588, 72–1724.**

United States District Court,
E. D. Pennsylvania.

May 20, 1974.

14.   380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

Alan N. Linder, Jon C. Lyons, York, Pa., J. Richard Gray, Lancaster, Pa., of Tri-County Legal Services, for plaintiffs.

Kimber E. Vought, Joseph A. Tate, Schnader, Harrison, Segal & Lewis, Philadelphia Pa., for defendants.

Leo Kostman, Pittsburgh, Pa., for intervenor-defendant, Pennsylvania Municipal Services Co.

HIGGINBOTHAM, District Judge.

## OPINION

██ Presently before the Court are two civil rights actions wherein the plaintiffs and the class they purport to represent assail the constitutionality of various provisions of the Pennsylvania Local Tax Collection Law, 72 P.S. § 5511.1 et seq. More specifically, plaintiffs contend that those sections of the Pennsylvania Local Tax Collection Law, 72 P.S. §§ 5511.17[1] and 5641,[2] authoriz-

---

1. 72 P.S. § 5511.17, as recently amended by the Legislature of the Commonwealth of Pennsylvania, states:

"Distress and Sale of Goods and Chattels of Taxpayer."

"Every tax collector shall have power, in case of the neglect or refusal of any person, copartnership, association, or corporation, to make payment of the amount of any tax due by him, after two months from the date of the tax notice, to levy the amount of such tax, any penalty due thereon, and costs, not exceeding costs and charges allowed constables for similar services, by distress and sale of the goods and chattels of such delinquent, wherever situate or found, provided the distraint levy includes written notice thereon that,

within ten days after the date of the levy, the alleged delinquent may appear at the office of the district magistrate in the district in which the goods and chattels are located and demand a hearing on the merits of the claim and also upon giving public notice of such sale, at least twenty days after the date of the levy or at least ten days after any hearing on the merits in which the alleged delinquent is adjudged delinquent, by posting ten written or printed notices, and by one advertisement in a newspaper of general circulation published in the county.

"No failure to demand or collect any taxes by distress and sale of goods and chat-

ing local tax collectors to distrain personal property of delinquent taxpayers prior to a hearing or an adjudication relative to liability for said taxes, are repugnant to the Due Process Clause of the Fourteenth Amendment. Predicating jurisdiction on 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. § 1343(3) and (4), plaintiffs seek declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

The parties have filed cross-motions for summary judgment and have stipulated to all the material facts. Without reaching the merits of the instant controversy, the Court finds that, by reason of the Johnson Act, 28 U.S.C. § 1341,[3] it is divested of jurisdiction and accordingly defendants' motion for summary judgment is hereby granted.

## I.

The named plaintiffs in these actions are allegedly indigent persons residing in York County and Lancaster County, Pennsylvania.[4] For various reasons the plaintiffs have failed to pay several municipal taxes, *viz.*, a county head tax, a borough head tax and/or local school taxes. The local and municipal taxes in question range from $5.00 to $36.75, exclusive of the costs of any distraint. For instance, plaintiff Shirley Kimmey's tax notices disclosed that her York County head tax was $5.00 and her borough head tax was $5.00. Her school district taxes were $20.00, consisting of a school head tax of $5.00, a school resident tax of $5.00 and a school occupation tax of $10.00. Persons who remit their taxes before a certain date are entitled to a two percent rebate and after a designated date failure to satisfy one's tax obligations carries a five percent penalty.

Periodically, adult residents of the respective taxing districts receive tax notices advising them of their specific tax assessments.[5] Upon expiration of an allotted period of time, all unpaid taxes

tels shall invalidate any return made, or lien filed for nonpayment of taxes, or any tax sale for the collection of taxes."

This amendment as well as the revision of 72 P.S. § 5641 was enacted after the plaintiffs instituted their suits. The material feature altered is that now after the distraint but before any sale the taxpayer can demand a hearing on the merits of his particular claim. Since the hearing offered the taxpayer in the amended statutes comes *after* the distraint though before any sale, plaintiffs maintain the procedure is still constitutionally deficient. See note 6, *infra*.

2. 72 P.S. § 5641, as amended, provides:
"Power of Collector to Compel Payment; Distress; Arrest of Delinquent; Lien Not Invalidated by Failure to Demand or Collect Tax."
"If any person, copartnership, association, or corporation shall neglect or refuse to make payment of the amount due by him or it for such tax within thirty days from the time of demand so made, it shall be the duty of the collector aforesaid to levy such amount by distress and sale of the goods and chattels of such delinquent, provided the distraint levy includes written notice thereon that, within ten days after the date of the levy, the alleged delinquent may appear at the office of the district magistrate in the district in which the goods and chattels are located, and de-

mand a hearing on the merits of the claim, and also upon giving public notice of such sale, at least twenty days after the date of the levy, or at least ten days after any hearing on the merits in which the alleged delinquent is adjudged delinquent, by written or printed advertisement. No failure to demand or to collect any taxes by distress and sale of goods and chattels, shall invalidate any return made or lien filed for nonpayment of taxes or any tax sale had for the collection of such taxes on such return or lien.
"This section shall extend to all collectors of delinquent taxes acting under general or local laws."

3. 28 U.S.C. § 1341 states:
"Taxes By States"
"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

4. The Court permitted the plaintiffs to prosecute these suits *in forma pauperis*.

5. The tax notices do not apprise the taxpayer that he may (1) request an exoneration from payment of the taxes in some circumstances, e.g., indigency or mistake, 72 P.S. § 5511.37; (2) pay the tax under protest, asserting any defenses and demanding a refund from the municipal authorities, 72 P.S. §

are considered delinquent. The municipal authority then compiles a list of these delinquent taxpayers and said list is forwarded to a tax collector or his agents for collection of the outstanding taxes. Under Pennsylvania law, 72 P.S. § 5511.2, political subdivisions of the Commonwealth are permitted to appoint tax collectors for performance of these services. Any costs incurred in the collection of the delinquent taxes are borne not by the municipality or taxing district but rather are imposed on the individual taxpayer.

The defendants here are duly authorized local tax collectors assigned to York County and Lancaster County. In discharging their duties the defendant tax collectors had delivered to the plaintiffs a notice captioned "Distraint for Delinquent Taxes." The notice stated that after giving ten (10) days notice plaintiffs' personal property would be sold at a public sale unless payment of the taxes in full was received within five (5) days.[6] Although plaintiffs did not pay their taxes, the defendants have made no effort to obtain possession of or sell any property subject to the distraints. While the defendants have stipulated that it is not their policy to remove or sell personal property under distraint, they do not aver that they are legally precluded under the law of Pennsylvania from pursuing such actions as a means of facilitating their tax collection.

After the plaintiffs instituted these suits challenging the constitutionality of the distraint provisions, the Court granted the plaintiffs an *ex parte* temporary restraining order enjoining the defendants from executing upon the distraints by sale of the property until the Court could schedule a hearing with all parties being present. Shortly thereafter the plaintiffs and defendants executed a stipulation that the latter would not distrain or sell any property pending the Court's disposition of this matter.

## II.

■■ The threshold inquiry for the Court must be whether it has jurisdiction to adjudicate this matter. The statutory authority that most directly impinges on the Court's jurisdiction is 28 U.S.C. § 1341, which provides:

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

This provision has engendered a substantial number of judicial rulings where the congressional intent has been exhaustively explored and its mandate frequently elucidated and clarified. For a collection of many of the cases explicating § 1341, see Annotation: Construction and Application of Federal Statute (28 U.S.C. § 1341) Prohibiting Federal District Courts From Interfering with Assessment, Levy, or Collection of State Taxes, 17 L.Ed.2d 1026 (1966). In the face of a statute whose language is unambiguous and where the history, meaning and application of the enactment have been virtually undeviatingly consistent, the Court is constrained to de-

---

5566b; or (3) pay the tax under protest and afterwards, to obtain a refund, institute a suit in assumpsit in which the taxpayer bears the costs as well as assumes the burden of proving entitlement to the refund, 72 P.S. § 5566c.

Of the named plaintiffs only Ms. Christina Eyler formerly invoked any of these remedies. Ms. Eyler's income of at least $320.80 per month is derived from welfare and support payments. In addition she earns some monies from teaching piano and receives some financial assistance from her parents. She applied for an exoneration from the City of Lancaster on the ground of indigency, but the City denied her application. Ms. Eyler has three children and is separated from her husband.

6. When the plaintiffs commenced this litigation, the former provisions of 72 P.S. §§ 5511.17 and 5641 did not require that a hearing be afforded the taxpayer subsequent to the distraint and prior to any sale. Thus before the amendments a delinquent taxpayer's personal property could be distrained *and* sold without any opportunity whatsoever for a hearing on his tax liability.

fer to these myriad precedents. When applicable, § 1341 effectively ousts the federal Court of jurisdiction and the Court is mandatorily foreclosed from granting relief. No conduct or actions of the parties can confer jurisdiction upon the Court when it otherwise does not exist nor can the parties waive objections to jurisdictional requirements. City of Houston v. Standard-Triumph Motor Company, 347 F.2d 194, 197 (5th Cir. 1965), cert. denied, 382 U.S. 974, 86 S. Ct. 539, 15 L.Ed.2d 466 (1966).

Section 1341 appears to have been a codification of established and recognized equitable principles. "The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such [equitable] relief should be denied in every case where the asserted federal right may be preserved without it. Whenever the question has been presented, [the United States Supreme Court] has uniformly held that the mere illegality or unconstitutionality of a state or municipal tax is not in itself a ground for equitable relief in the courts of the United States." Matthews v. Rodgers, 284 U.S. 521, 525–526, 52 S. Ct. 217, 219–220, 76 L.Ed. 447 (1932).

■ The statutory prohibition of § 1341 cannot be evaded merely by framing the complaint as a request for declaratory relief. The seminal pronouncement of Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 298–301, 63 S.Ct. 1070, 1073–1074, 87 L. Ed. 1407 (1943), holding that the Declaratory Judgment Act falls within the ambit of § 1341, persuasively evidences the paramount congressional concern that federal Courts abstain and refrain from unnecessarily interfering in or obstructing the domestic financial policies of states. See, also, Ford Motor Credit Co. v. Louisiana Tax Commission, 440 F.2d 675 (5th Cir. 1971); Gray v. Morgan, 371 F.2d 172, 174 (7th Cir. 1966); City of Houston v. Standard-Triumph Motor Company, *supra,* 347 F.2d at

197–198; Helmsley v. City of Detroit, 320 F.2d 476, 480 (6th Cir. 1963); Charles R. Shepherd, Inc. v. Monaghan, 256 F.2d 882 (5th Cir. 1958); Miller v. City of Greenville, 138 F.2d 712, 719 (5th Cir. 1943); Non-Resident Tax Ass'n. v. Municipality of Philadelphia, 341 F.Supp. 1135, 1138 (D.N.J.1971), aff'd 406 U.S. 951, 92 S.Ct. 2061, 32 L. Ed.2d 340 (1972); Mandel v. Hutchinson, 336 F.Supp. 772, 777–779 (C.D.Cal. 1971); Hickman v. Wujick, 333 F.Supp. 1221, 1225–1226 (E.D.N.Y.1971); Olan Mills, Inc. v. Opelika, 207 F.Supp. 332, 334 (M.D.Ala.1962); Mid-Continent Airlines v. Nebraska State Board of Eq., 105 F.Supp. 188, 193–194 (D.Neb.1952), and Collier Advertising Service v. City of New York, 32 F.Supp. 870, 872 (S.D. N.Y.1940).

■ The Court here is indeed acutely aware that the instant actions seek vindication for civil rights encroachments, but where jurisdiction is circumscribed by § 1341, premising the Court's power on 42 U.S.C. § 1983 and its jurisdictional analogue, 28 U.S.C. § 1343, will not compel a contrary result. In Lynch v. Household Finance Corp., 405 U.S. 538, 552–553, 92 S.Ct. 1113, 1121–1122, 31 L. Ed.2d 424 (1972), rehearing denied, 406 U.S. 911, 92 S.Ct. 1611, 31 L.Ed.2d 822 (1972), the Court definitively crystalized the concept that property rights were cognizable as fundamental civil rights under 28 U.S.C. § 1343. Prior to *Lynch,* several federal Courts, when confronted with state tax statutes where the taxpayer had attempted to bottom jurisdiction on § 1343, had ruled that § 1343 did not encompass protection of property rights and thus in those contexts § 1343 was inapplicable and not determinative. See, *e. g.,* Gray v. Morgan, *supra,* 371 F.2d at 175; Jones v. Township of North Bergen, 331 F.Supp. 1281, 1285 (D.N.J.1971); Bussie v. Long, 254 F.Supp. 797, 801 (E.D.La.1966), aff'd, 383 F.2d 766 (5th Cir. 1967), and Abernathy v. Carpenter, 208 F.Supp. 793, 794–795 (W.D.Mo.1962), aff'd, 373 U.S. 241, 83 S.Ct. 1295, 10 L.Ed.2d 409 (1963). Nonetheless, the foregoing cas-

es, along with other pre-*Lynch* authorities, American Commuters Ass'n v. Levitt, 405 F.2d 1148, 1150–1151 (2d Cir. 1969) and Hickman v. Wujick, *supra,* 333 F.Supp. at 1224, were unanimously in agreement that, even assuming jurisdiction existed, a taxpayer could not avoid the application of § 1341 by relying on § 1343 since the tax injunction statute was dispositive.

In Bland v. McHann, 463 F.2d 21 (5th Cir. 1972), cert. denied, 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973), a case decided subsequent to *Lynch,* the Fifth Circuit squarely faced the quandary regarding the proper accommodation between the two conflicting statutes. On the one hand, there is the acknowledged concern that victims of civil rights abridgements have speedy access to federal Courts for the prosecution of those deprivations. Counterbalancing that objective is the long-standing policy enunciated in the Johnson Act of comity between the federal system and the states' internal administration and regulation of their affairs.

In *Bland,* blacks in Edwards, Mississippi had conducted peaceful protests against local merchants and municipal officials because of their alleged racial discrimination. Some of the black property owners thereafter brought a suit under § 1983, alleging that as a retaliatory measure for their civil rights activities, their property tax assessments had been discriminatorily increased. In resolving the controversy, the Court of Appeals remarked:

"It is well established that § 1341 is an explicit congressional limitation on the jurisdiction of the federal courts in cases which would enjoin, suspend or restrain state tax levy, assessment or collection. Taxpayers seek to circumvent § 1341 by arguing that relief under § 1983 is supplemental and is not limited to any requirement of exhaustion of state remedies. We do not disagree with the general rule that exhaustion is not required in § 1983 cases; however, *in this case* §

*1983 collides full force with a specific congressional limitation on federal jurisdiction. In such circumstances we are convinced that § 1341 must prevail."* (Footnote omitted) [Emphasis added.] *Id.* at 24.

Moreover, the *Bland* Court concluded that the result was in no way contingent upon or affected by whether procedurally the state remedy was "the best remedy available or even equal to or better than the remedy which might be available in the federal courts." *Id.* at 29.

■ Against this background, the Court now examines plaintiffs' contentions. First, although not specifically contested by plaintiffs, it should be regarded as well settled and unquestioned that the Johnson Act applies to municipal and local taxes. See, *e. g.,* Pitts v. Kunsman, 363 F.2d 841 (3d Cir. 1966); City of Houston v. Standard-Triumph Motor Company, *supra;* Henry v. Metropolitan Dade County, 329 F.2d 780 (5th Cir. 1964); Helmsley v. City of Detroit, *supra;* Carson v. City of Fort Lauderdale, 293 F.2d 337 (5th Cir. 1961); Phipps v. School District of Pittsburgh, 111 F.2d 393 (3d Cir. 1940); Hammonds v. City of Corpus Christi, Texas, 226 F.Supp. 456 (S.D. Texas 1964), aff'd, 343 F.2d 162 (5th Cir. 1965), cert. denied, 382 U.S. 837, 86 S.Ct. 85, 15 L.Ed.2d 80 (1965), and Carbonneau Industries, Inc. v. City of Grand Rapids, 198 F.Supp. 629 (W.D. Mich.1961).

■ To circumvent the § 1341 proscription plaintiffs primarily urge that their suits do not challenge the validity of the taxes but instead they are attacking the unconstitutional manner in which the statute is administered and implemented. *Cf.* Kortz v. Ellingson, 181 F.Supp. 857, 859 (D.Colo.1960). The argument however does not withstand rigorous scrutiny. In order to grant plaintiffs the relief they request the Court perforce would be required to enjoin the *collection* of the taxes and thus this relief clearly would be precluded by § 1341. *Cf.* Natural Gas Pipeline

Co. of America v. Sergeant, 337 F.Supp. 88, 89–90 (D.Kansas 1972) and Sears, Roebuck & Co. v. Roddewig, 24 F.Supp. 321, 324–325 (S.D.Iowa 1938).

Plaintiffs here do have a "plain, speedy and efficient remedy" in the courts of the Commonwealth of Pennsylvania. Some of the plaintiffs allege that the distraint procedure deprives them of the opportunity to dispute their liability for the taxes unless they either pay the tax under protest and seek a refund or opt not to pay and then subject themselves to the application of the distraint process. Pursuant to 72 P.S. § 5511.37 [7] the taxpayer, at no expense to himself and prior to payment of any tax, can apply with the local authority for an exoneration from payment of the tax. If a mistake had been committed, as apparently is asserted by plaintiff Hawkes when she claims she did not reside in the taxing district during the period for which she was taxed, she can request an exoneration. If the taxpayer is indigent, an exoneration is available.

Although plaintiff Eyler requested an exoneration on the ground of indigency and had her request denied, the Court cannot conclude that the mechanism is so discretionary, uncertain or inadequate that it constitutes an exceptional or extraordinary circumstance warranting federal intervention N.B.[8] *Cf.* Hillsborough v. Cromwell, 326 U.S. 620, 625–630, 66 S.Ct. 445, 449–451, 90 L.Ed. 358 (1946); Allen v. Regents of University System, 304 U.S. 439, 448–449, 58 S.Ct. 980, 984, 82 L.Ed. 1448 (1938); Miller v. Standard Nut Margarine Co. of Florida, 284 U.S. 498, 509–511, 52 S.Ct. 260, 263–264, 76 L.Ed. 422 (1932); Hopkins v. Southern California Telephone Co., 275 U.S. 393, 399–400, 48 S.Ct. 180, 182, 72 L.Ed. 329 (1928); Bohler v. Callaway, 267 U.S. 479, 486–489, 45 S.Ct. 431, 434–435, 69 L.Ed. 745 (1925); Greene v. Louisville & Interurban R. Co., 244 U.S. 499, 519–521, 37 S.Ct. 673, 682, 61 L.Ed. 1280 (1917); Louisville & Nashville R. Co. v. Public Service Commission of Tenn., 249 F.Supp. 894, 903–904 (M.D.Tenn.1966); D. C. Transit System v. Pearson, 149 F.Supp. 18, 19–20 (D.D.C.1957), and Birch v. McColgan, 39 F.Supp. 358, 365–366 (S.D.Cal.1941).

In addition to the exoneration procedure, under Pennsylvania law, 72 P.S. § 5566b,[9] a taxpayer can remit the tax to

---

7. 72 P.S. § 5511.37 states:

"Exonerations

"Taxing districts shall at all times make exonerations for uncollectible occupation, poll and per capita taxes, mistakes, indigent persons, unseated lands, deaths, removals, et cetera, as to them shall appear just and reasonable. The chief clerk or secretary, as the case may be, of each taxing district shall enter in a book or books, to be kept for that purpose, the names of all persons exonerated, together with the reason why, the amount of the tax, and date when made, and give to the tax collector a certificate directed to the proper treasurer, stating the nature of the tax and the amount exonerated in order to make settlement accordingly. When a tax collector has been exonerated from the collection of any tax, such action shall not in any way have the effect of discharging or limiting the liability of the taxable, but all methods of enforcing collection of taxes shall continue as though no exoneration had been made."

8. 72 P.S. § 5511.37 does not provide any definition of indigency. Evidently each authority makes a factual determination on an applicant upon consideration of the taxpayer's assets and liabilities. 53 P.S. § 6902 however provides in relevant part: "Each local taxing authority may by ordinance or resolution, exempt any person whose total income from all sources is less than two thousand dollars ($2,000) per annum from the per capita or similar head tax, occupation tax and occupational privilege tax, or any portion thereof, and may adopt regulations for the processing of claims for exemptions." While in the light of today's inflationary times such a figure seems utterly unrealistic, a federal Court should not usurp a strictly legislative judgment interposing its own view as to who should be exempt from taxes.

9. 72 P.S. § 5566b reads:

"Refund of taxes, etc., to which political subdivision is not legally entitled"

"Whenever any person or corporation of this Commonwealth has paid or caused to

the appropriate authority and simultaneously tender a written and verified claim for a refund. This procedure can be utilized by the taxpayer without incurring any expense other than payment of the tax. The procedure is an administrative one, but it does afford the taxpayer the opportunity to raise any defenses. Should either of these aforementioned methods prove unsuccessful, a third remedy exists in 72 P.S. § 5566c.[10] The taxpayer can pay the tax under protest and then institute an action in assumpsit for a refund where he bears the cost of litigation and assumes the burden of proof.

Payment of the tax under protest and demanding a refund has frequently been upheld as a plain, speedy and efficient remedy under state law. See, e. g., Matthews v. Rodgers, *supra*, 284 U.S. at 525–528, 52 S.Ct. at 219–220; Aronoff v. Franchise Tax Board of State of California, 348 F.2d 9, 10–11 (9th Cir. 1965); Helmsley v. City of Detroit, *supra*, 320 F.2d at 479–481, and Carbonneau Industries, Inc. v. City of Grand Rapids, *supra*, 198 F.Supp. at 632–633.

*Cf.* George F. Alger Co. v. Peck, 74 S.Ct. 605, 606–607 (1954); Ford Motor Credit Co. v. Louisiana Tax Commission, *supra*, 440 F.2d at 676–677; Kiker v. Heffner, 409 F.2d 1067, 1069 (5th Cir. 1969); Pitts v. Kunsman, *supra*, 363 F. 2d at 842–843; Henry v. Metropolitan Dade County, *supra*, 329 F.2d at 781; Corbett v. Printers & Publishers Corp., 127 F.2d 195, 197–198 (9th Cir. 1942); Phipps v. School District of Pittsburgh, *supra*, 111 F.2d at 397–398; and Delaware, Lackawanna and Western R. Co. v. Kingsley, 189 F.Supp. 39, 53 (D.N.J. 1960).

In the matter at bar plaintiffs assert that the distraint procedure runs afoul of the Fourteenth Amendment Due Process Clause. But state Courts are mandated and empowered to vigorously enforce and protect rights secured by the federal constitution of the United States. See, e. g., Helmsley v. City of Detroit, *supra*, 320 F.2d at 480; Phipps v. School District of Pittsburgh, *supra*, 111 F.2d at 400; Baker v. Atchison, T. & S. F. Ry. Co., 106 F.2d 525, 530 (10th

---

be paid, or hereafter pays or causes to be paid, into the treasury of any political subdivision, directly or indirectly, voluntarily or under protest, any taxes of any sort, license fees, penalties, fines or any other moneys to which the political subdivision is not legally entitled; then, in such cases, the proper authorities of the political subdivision, upon the filing with them of a written and verified claim for the refund of the payment, are hereby directed to make, out of budget appropriations of public funds, refund of such taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled. Refunds of said moneys shall not be made, unless a written claim therefor is filed, with the political subdivision involved, within two years of payment thereof.

"The right to a refund afforded by this act may not be resorted to in any case in which the taxpayer involved had or has available under any other statute, ordinance or resolution, a specific remedy by way of review, appeal, refund or otherwise, for recovery of moneys paid as aforesaid, un-

less the claim for refund is for the recovery of moneys paid under a provision of a statute, ordinance or resolution subsequently held, by final judgment of a court of competent jurisdiction, to be unconstitutional, or under an interpretation of such provision subsequently held by such court, to be erroneous."

10. 72 P.S. § 5566c provides:
"Action of assumpsit in case of refusal of refund
"In the event of refusal or failure on the part of authorities of the political subdivision involved to make any such refund of taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled, then the aggrieved person or corporation shall have the right to bring suit for and recover any such taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled, subject to the limitation herein provided, by instituting an action in assumpsit in the court of common pleas of the county wherein such political subdivision is located."

Cir. 1939), cert. denied, 308 U.S. 620, 60 S.Ct. 296, 84 L.Ed. 518 (1939), and Chicago, Duluth & Georgian Bay Transit Co. v. Nims, 140 F.Supp. 920, 923 (E.D. Mich.1956), aff'd, 252 F.2d 317 (6th Cir. 1956).

■ While it is true that the distraint procedure attacked here is not the exclusive method for collection of delinquent taxes,[11] it is the procedure principally relied upon by the defendants. The ultimate forum for challenging the constitutionality of state taxing statutes lies in the state Courts. Comity requires a recognition by a federal Court of the integral significance of the tax collection scheme utilized by a state and its interrelationship with the overall fiscal system of that state or its political subdivision.

The Court is deliberately refraining from considering the merits of these lawsuits since it believes § 1341 is applicable. In Bland v. McHann, *supra*, 463 F.2d at 28–29, the Court of Appeals affirmed the District Court Judge insofar as he relied on § 1341, but the Fifth Circuit vacated that portion of the lower court judgment which went to the merits of the controversy, noting that it was inappropriate for the District Judge to pursue that course of action. Similarly, in Charles R. Shepherd, Inc., v. Monaghan, *supra*, 256 F.2d at 884, the Court of Appeals underscored its affirmance of the lower court ruling on the point of non-jurisdiction by striking any reference to the granting of summary judgment for the defendants, treating the lower court ruling as a dismissal for want of jurisdiction.

Thus for all the foregoing reasons the Court concludes that § 1341 is controlling and consequently the Court is without jurisdiction in this matter.

---

11. Other methods available for the collection of taxes include (1) distress and sale of personal property of persons occupying real property, 72 P.S. § 5511.18; (2) payment of tax on real property out of rent payable by the tenant, 72 P.S. § 5511.19; (3) garnishment of wages, 72 P.S. §§ 5511.20 and 5511.20a; and (4) institution of suits in assumpsit by tax collector against the taxpayer, 72 P.S. § 5511.21.