Donald F. **GARRETT** et al.

v.

James B. **BAMFORD**, Chairman, et al.

Civ. A. No. 74–2103.

United States District Court,
E. D. Pennsylvania.

May 20, 1975.

Harold E. Kohn, Donald L. Weinberg, Philadelphia, Pa., for plaintiffs.

C. Wilson Austin, Jos. E. DeSantis, Reading, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

In this action plaintiffs charge defendants with violations of the Civil Rights Act, 42 U.S.C. §§ 1981, 1983, certain Pennsylvania statutes, the Fourteenth Amendment, and Articles I and VIII of the Pennsylvania Constitution. The named plaintiffs and the class of persons they purport to represent own properties in residential areas of Reading and Berks County, populated predominantly by non-whites, which have allegedly been assessed for taxation by defendants at disproportionately higher values than similar properties located in substantially all-white areas. Defendants, members of the Board of Assessment Appeals of Berks County, are alleged to have systematically and intentionally discriminated against plaintiffs by assessing their properties at higher percentages or ratios of actual value causing plaintiffs to pay disproportionately high taxes. Plaintiffs do not seek a reduction in their individual assessments *per se*; they pray for preliminary and permanent injunctive relief restraining such alleged violations of state and federal law by requiring a reassessment, under this Court's immediate and continuous supervision, of all owner-occupied residential property in defendants' jurisdiction and the yearly submission of proof that such new assessments are uniform and non-discriminatory. Defendants have responded with a motion to dismiss the complaint for lack of subject-matter jurisdiction under F.R.Civ.P. 12(b)(1) which is now before the Court.[1]

The complaint sets forth violations of both federal and state law. Counts I and II allege violations of 42 U.S.C. §§ 1981[2], 1983[3] and the Fourteenth Amendment in that defendants assessed plaintiffs' property at disproportionately high ratios compared to assessments of similar property in exclusively white areas of

---

1. There are outstanding motions filed by plaintiffs pertaining to certification of a class action and to discovery which are mooted by our disposition of defendants' motion as discussed hereafter.

2. 42 U.S.C. § 1981 states:

"All persons within the jurisdiction of the United States shall have the same right in every State * * * to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pain, penalties, taxes, licenses, and exactions of every kind, and to no other."

3. 42 U.S.C. § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

**904**

population concentration. Counts III and IV allege that such practices contravene Article I, § 2 and Article VIII, § 1 of the Pennsylvania Constitution [4] as well as 72 P.S. § 5344(a).[5] Count V charges that defendants failed to make annual assessments of "properties in predominantly or exclusively white areas which are increasing in value and in substantially non-white areas which are decreasing in value." Finally, Count VI characterizes defendants' practice as unlawful discrimination based on economic status in violation of the Equal Protection Clause of the Fourteenth Amendment.

The keystone of defendants' motion to dismiss for lack of subject-matter jurisdiction rests on the Tax Injunction Act, 28 U.S.C. § 1341, which provides:

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

As defendants characterize this action, this federal court *prima facie* lacks jurisdiction because the injunctive relief sought would perforce require the invalidation of the current assessments of relevant properties in the county. And, as plaintiffs have a plain, speedy and efficient remedy in the courts of Pennsylvania, i. e., by filing a bill in equity or in pursuing the applicable statutory procedure for assessment appeals, this Court must refrain from intermeddling into what is a purely localized fiscal function conducted by county officials in their administrative capacity. Plaintiffs counter that the statutory procedure for assessment appeals is defective and, therefore, inadequate for two reasons: first, individual appeals of assessments by plaintiffs would entail a piecemeal, cumbersome and lengthy process which, in the final analysis, would not yield the broad injunctive relief they now seek. Second, this procedure is attacked on the ground that it is incapable of dealing effectively with and eradicating alleged neighborhood-by-neighborhood discrimination because the proof required in each assessment appeal would involve a comparison of the subject property only with similar properties in the *same* area. This procedure, plaintiffs contend, could only perpetuate the alleged neighborhood-by-neighborhood pattern of discrimination. In addition, it is asserted that equitable relief is not available under current pertinent Pennsylvania cases which have uniformly narrowed the taxpayers' remedy to an attack on assessments by the statutory procedure, rather than by a bill in equity, thus leaving plaintiffs without a plain, speedy and efficient remedy in the state courts. Finally, plaintiffs urge that the paramount national policy as codified in the Civil Rights Acts and refined by thousands of court decisions overrides the restrictive federal jurisdictional limits of the Tax Injunction Act.[6]

4. Article VIII, Section 1, provides:
   "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

5. 72 P.S. § 5344(a) states:
   "(a) It shall be the duty of said board [of Assessment Appeals], in each county to which this act applies, to make and have supervision of the making of annual assessments of persons, property and occupations now or hereafter made subject to assessment for taxation for county, borough, town, township, school, poor and institu-

tion district purposes, and to make and have supervision of listing and valuation of property excluded or exempted from taxation. *In making assessments of property at less than actual value, it shall accomplish equalization with other properties within the taxing district.* The making of triennial assessments as provided by existing law is hereby abolished." [Emphasis added.]

6. Plaintiffs also assert that jurisdictional facts are in dispute so that the motion cannot be decided properly at this procedural juncture. The plaintiffs, however, have not demonstrated with specificity which facts

The sole issue raised by defendants' motion is whether the jurisdictional limitation of § 1341 should apply in this case, and in resolving the question, we are required to canvass the gamut of remedies which are available to plaintiffs in the courts of Pennsylvania by utilizing the statutory procedures or by proceeding in equity.

At the outset, we note that the applicable procedure to appeal assessments under Pennsylvania law is set forth in 72 P.S. §§ 5348, 5349, and 5350. After assessments are completed, notice must be given to property owners whose assessments have been increased or decreased. § 5349 provides that persons who are aggrieved [7] may appeal by notifying the Board of Assessment Appeals (defendants herein) prior to September 1. Thereafter from September 1 to October 1, the Board must hear all the assessment appeals, after which appropriate orders for changes are incorporated into the tax rolls and sent to the appropriate political subdivisions. 72 P.S. § 5349. The taxpayer may appeal to the Court of Common Pleas, § 5350, where, after a plenary hearing *de novo* and a finding that the assessment was erroneous, the Court may award an exoneration or restitution under § 5350d. § 5350 requires the Court "to make such changes therein as may be right and proper", and further provides:

> " * * * the court shall determine, from the evidence submitted at the hearing, what ratio of assessed value to actual value was used generally in the taxing district, and the court shall direct the application of the ratio so

found to the value of the property which is the subject matter of the appeal, and such shall be the assessment.
* * * * "

Plaintiffs argue that the comparison of valuation is limited to properties within the same neighborhood to support the proposition that the statutory remedy is inadequate. Appeal of Brooks Building, 391 Pa. 94, 137 A.2d 273 (1958); Appeal of Rick, 402 Pa. 209, 167 A.2d 261 (1961). As plaintiffs put it, these remedies are "unsuited for the correction of discrimination between entire neighborhoods and are thus inadequate remedy for the correction of wholesale discrimination." (Brief at page 9) Moreover, plaintiffs point to the statutory burden imposed upon them to prove that an individual assessment is improper, 72 U.S. § 5350(b) [8], and argue that the procedure unfairly pits the property owner, with limited resources and experience, against the board, armed with the expertise developed in numerous assessments and appeals therefrom.

Thus, from the foregoing overview of the assessment appeal procedure outlined by statute, plaintiffs contend that the *precise* relief sought by plaintiffs is not within the power of the Board of Assessment Appeals to grant. So construed, plaintiffs understandably contend that the statutory remedy is "inadequate" and, therefore, not a "plain, speedy and efficient remedy" within the meaning of § 1341. Such conclusion presupposes that the statute will be so literally and limitedly construed as to preclude the resolution of inequitable

are disputed on the jurisdictional issue and, as we construe this action, the only relevant questions are matters of law which are now ripe for a decision.

7. 72 P.S. § 5349(c) states:
   "Any person aggrieved by any assessment, whether or not the value thereof shall have been changed since the preceding annual assessment, or any taxing district having an interest therein, may appeal to the board for relief. Any person or such taxing district desiring to make an appeal shall, on or before the first day of Septem-

ber, file with the board an appeal, in writing, * * * "

8. 72 P.S. § 5350(b) states:
   "(b) In any appeal by a taxable from an *action* by the board, the board shall have the power and duty to present a prima facie case in support of its assessment, to cross-examine the taxable's witnesses, to discredit or impeach any evidence presented by the taxable, to prosecute or defend an appeal in any appellate court, and to take any other necessary steps to defend its valuation, assessment and assessment ratio."

neighborhood-by-neighborhood assessments. True, the statute, on its face, is understandably designed to take care of the usual, ordinary and expected situation involving individual appeals within a taxing district and a neighborhood. However, we cannot assume that the use, for example, of multiple or mass appeals within and across neighborhood lines or other possible procedures combined with the ingenuity expected of assessment authorities to reach the inequities, if any, presented and proved, will not obtain a decision on the issues presented notwithstanding facial deficiencies as to the individual taxpayer's remedies in the statute. Indeed, something not unlike a mass appeal is contemplated by the statute. Specifically, § 5350i provides:

"The corporate authorities of any borough, town, township, school and poor district, who may feel aggrieved by any assessment of property or subjects of taxation for its corporate purposes, shall have the right to appeal therefrom in entirety or by individual assessments to the board or to the court of common pleas or the Superior or Supreme Court in the same manner, subject to the same procedure, and with like effect as if such appeal were taken by a taxable with respect to his assessment, and in addition may take an appeal from any decision of the board or court of common pleas as though it had been a party to the proceedings before such board or court even though it was not such a party in fact."

The procedure utilized by a Board of Assessment Appeals to dispose of such an appeal by a school district, for example, must encompass the simultaneous consideration of many properties. Here the relief sought by plaintiffs involves the identical proposition—simultaneous consideration of many properties. Methods employed by the Board in discharging its statutory duties outlined in § 5350i are logically no less applicable or inappropriate for reaching the end plaintiffs seek here.

Thus, in accordance with the congressional intention expressed in § 1341, the state administrative authorities should be given the first opportunity to face and resolve the issue. Failing in that, an appeal to the state court is provided by the statute. Here, the ingenuity of the state court in the realistic and non-technical construction of the state statute can reasonably be assumed to reach the issues fairly presented. That the state authorities and the state courts should so construe the state statute as to reach the issues rather than evade them and thus force the plaintiffs into the federal courts is not and should not be an unexpected result. No precedent has been cited establishing that the state assessment authorities and the courts will not squarely meet and resolve the issues raised without federal intervention.

Therefore, we cannot, at this time, reach the conclusion that the plaintiffs are without a plain, speedy and efficient remedy in the state courts. Rather, until the state authorities and the state courts demonstrate otherwise, we find to the contrary.

Turning to the second prong of plaintiffs' attack, that equity does not have jurisdiction in a case of this nature, plaintiffs cite two recent cases: Allegheny Co., So. Dist. Tax Assess. AP., 7 Pa.Cmwlth.Ct. 291, 298 A.2d 643 (1972) and Rochester & Pgh. C. Co. v. Ind. Co. Bd. of A., 438 Pa. 506, 266 A.2d 78 (1970). In *Rochester*, the plaintiff sought to enjoin the application of a revised method of taxation on the grounds that the rates and classifications violated the Equal Protection Clause of the Fourteenth Amendment and the Uniformity Clause of the Pennsylvania Constitution, Art. VIII, § 1. The Supreme Court affirmed the dismissal of the bill in equity because the taxpayer had an adequate remedy at law, stating:

" \* \* \* [W]hat is required to confer jurisdiction on an equity court is the existence of a substantial question of constitutionality (and not a

mere allegation) and the absence of an adequate statutory remedy." [footnote omitted] 438 Pa. 508, 266 A.2d 79.

However, the Court did *not* hold that equity jurisdiction could *never* be invoked, only that

" * * * Expertise in this field lies in the administrative bodies, and we should be slow, as far as jurisdiction is concerned, to favor equity courts over them. * * *" Fn. 1 at 438 Pa. 508, 266 A.2d 79.

Later, in the *Allegheny* case, the Commonwealth Court sustained preliminary objections to a bill in equity brought by sixteen municipalities and a number of taxpaying residents of said municipalities, which attacked a system of triennial assessments as a violation of the Equal Protection Clause of the Fourteenth Amendment and Article VIII, § 1 of the Pennsylvania Constitution. Relief sought included an order that all increased asssessments to held in abeyance; a suspension of all such increases; and an injunction against the levy and collection of any taxes due to the increased assessments. Citing *Rochester*, the Court stated:

" * * * [E]ven a direct challenge to 'the intrinsic constitutionality of a taxing scheme' is not alone sufficient to confer jurisdiction on a Court of Equity—there must also be the absence of an adequate remedy at law." 7 Pa.Cmwlth.Ct. 298, 298 A.2d 647.

Then, characterizing the gist of the action as follows,

"And because it is the amount of a property owner's assessment which is the basic issue, the Board ought to be permitted to pass upon the assessment in the first instance," *Id.* at 302, 298 A.2d 648.

the Court rejected plaintiffs' arguments that the Board was incompetent to pass upon constitutional questions, that a multiplicity of actions would thus be encouraged, and that plaintiffs were suffering irreparable harm. We conclude, however, that these cases are not convincing support for the proposition plaintiffs have advanced here.

█ A series of other cases indicates that equitable jurisdiction is appropriate in certain, albeit limited, circumstances. Narehood v. Pearson, 374 Pa. 299, 96 A.2d 895 (1953); Y. M. C. A. v. City of Reading, 402 Pa. 592, 167 A.2d 469 (1961); Crosson v. Downingtown Area School District, 440 Pa. 468, 270 A.2d 377 (1970); Campbell v. Coatesville Area School District, 440 Pa. 496, 270 A.2d 385 (1970). *See also* Phipps v. School District of Pittsburgh, 111 F.2d 393 (3rd Cir. 1940); Guerra v. City of Philadelphia, 30 F.Supp. 791 (E.D.Pa. 1940). Plaintiffs allege a substantial constitutional question, whether the disparity in assessments on a neighborhood-by-neighborhood basis violates the uniformity requirements of the State Constitution. In addition, only an equitable remedy is sought, namely, injunctive relief, which does not seek primarily to invalidate or adjust the individual plaintiff's assessments, but is designed to remedy assessment patterns which serve defendants' alleged illegal policy of intentional discrimination against non-white residential neighborhoods. The particular pitch of this case, we believe is such that it is cognizable in a court of equity in Pennsylvania, despite the contracted scope of equitable jurisdiction.

█ Under the Tax Injunction Act, federal courts are divested of subject-matter jurisdiction when the remedy in state courts is "plain, speedy and efficient". The test is whether the remedy is adequate, Spector Motor Service, Inc. v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951), and it need not be "the best remedy available or even equal to or better than the remedy which might be available in the federal courts", Bland v. McHann, 463 F.2d 21, 29 (5th Cir.) cert. denied 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973). Even the unlikelihood of success in the state court is not sufficient to carry a

case beyond the prohibition of the Injunction Act, Non-Resident Taxpayers Association v. Philadelphia, 478 F.2d 456 (3d Cir. 1973). The statute, moreover, codifies the longstanding, deeply rooted principle of federal equitable jurisdiction which restrains the federal courts from interference with the internal fiscal operations of the states. Great Lakes Dredge & Dry Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L. Ed. 1407 (1942); Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447 (1932). In *Rodgers*, the Court stated:

"The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal rights may be preserved without it." 284 U.S. 525, 52 S.Ct. 219.

■ This federal policy is no less applicable to actions brought under the Civil Rights Act or those which involve constitutional challenges to state taxes and assessments. Lynch v. Household Finance Corp., 405 U.S. 538, 542, 543 n. 6, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972); *Bland, supra*; Evangelical Catholic Communion, Inc. v. Thomas, 373 F.Supp. 1344 (D.Vt.1973); Mandel v. Hutchinson, 494 F.2d 364 (9th Cir. 1972); Klotz v. Consolidated Edison Co. of New York, Inc., 386 F.Supp. 577 (S. D.N.Y.1974). This principle was recently endorsed in Steffel v. Thompson, 415 U.S. 452, 472, 94 S.Ct. 1209, 39 L. Ed.2d 505 (1974). *See also* Perez v. Ledesma, 401 U.S. 82, 90 S.Ct. 2234, 26 L.Ed.2d 790 (1971) (Brennan, J., concurring and dissenting).

Plaintiffs argue nevertheless that the sweeping, absolute language of 42 U.S.C. § 1981 and its jurisdictional analogue, § 1343(3) [9] is sufficient to require an exception in the case at bar. Citing the apparent conflict between § 1343(3) and § 1341, plaintiffs argue that since Congress amended § 1343 as late as 1958 without simultaneously carving an exception into § 1341, the conflict thus created is controlled by the latest amendment of the Civil Rights statute. We must reject this argument. Not only was the Tax Injunction Act enacted long after the Civil Rights Acts and their jurisdictional analogues had been the law—thus suggesting that plaintiffs' logic supports the opposite conclusion—but § 1341 clearly and unequivocally mandates the federal policy of non-interference by federal courts in local fiscal operations which are the product of the administrative expertise of the individual states. Had Congress chosen to create the exception which plaintiffs urge us to create, consistent language could and would have been engrafted into § 1341. We agree that the language of § 1981 is broad and absolute, but we cannot ignore the plain impact of the sweeping and unconditional wording of § 1341.

We thus conclude that the Tax Injunction Act dictates dismissal of the complaint for lack of subject-matter jurisdiction. Even assuming that the precise relief sought by the plaintiffs is, as contended, beyond the purview of the precise statutory remedy designed to correct assessments, plaintiffs have not met their burden of demonstrating that equitable jurisdiction is not available in the Pennsylvania courts, and thus have not shown the lack of an adequate remedy.[10]

9. § 1343 provides:
"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
  *    *    *    *    *
"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privi-

lege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

10. Plaintiffs have not attempted to bring their cause into the equity jurisdiction of a

Those cases which have upheld federal jurisdiction despite the Tax Injunction Act have all been based on a convincing demonstration of the lack of an adequate remedy in the state courts; *e. g.*, Hillsborough Township, Somerset County, N. J. v. Cromwell, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946); United States Steel Corp. v. Multistate Tax Com'n., 367 F.Supp. 107 (S.D.N.Y.1973); Husbands v. Commonwealth of Pennsylvania, 359 F.Supp. 925 (E.D.Pa.1973); Georgia R. & Banking Co. v. Redwine, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1951). In *Hillsborough*, the Court concluded that the uncertainty surrounding the adequate protection of the taxpayer's federal right to equal protection in the state courts was sufficient for the federal court to retain jurisdiction. The uncertainty of the adequacy of the state remedy was generated by numerous factors including the lack of power of the state board of tax appeals to pass upon constitutional issues, the weighty burden on the taxpayer who could not seek to reduce his own assessment, but was limited to an attempt to raise others' assessments to conform with his own, and the real possibility that the state's highest court would refuse to hear an appeal in the case. On these factors, the Court concluded that the taxpayer's federal right was so jeopardized that federal jurisdiction was appropriate. In *United States Steel Corp.*, *supra*, since the taxpayer faced the spectre of a multiplicity of suits in separate state courts, although its claim was solely based on the invalidity of the tax on constitutional grounds, the federal court concluded that an effective remedy was not available without federal jurisdiction. In *Georgia R. & Banking Co.*, *supra*, the state courts had already denied injunctive relief on the claim of unconstitutionality and the remedy for refunds protected only a portion of the total taxes collected from the claimant.

Plaintiffs cite *Husbands, supra*,[11] as authority for federal jurisdiction in the instant case. However, the instant case is clearly distinguishable. In *Husbands*, the taxpayers attacked, *inter alia*, the application of a uniform tax millage rate to various districts which had utilized non-uniform assessment ratios. Judge Newcomer refused to dismiss the complaint, which concerned multiple issues not here involved. To the extent pertinent here, the attack there was upon the millage rates and not upon the manner of assessment. Here, the plaintiffs' attack is directed primarily at the variance of individual assessments in a pattern corresponding to the divisions between white and non-white residential areas, which if ultimately proved would require massive reassessments by the defendants. The relief sought here, as opposed to that in *Husbands*, calls for wholesale federal intervention into the normal state statutory procedure for the assessment, levy and collection of property taxes. This has been countermanded by § 1341.

There are additional reasons why we should decline jurisdiction of this case. The courts of Pennsylvania are best suited and equipped to pass upon plaintiffs' charges of violations of the Pennsylvania Constitution and the applicable assessment statutes. Moreover, should the plaintiffs prevail on these claims, the federal aspects of the complaint may well be vitiated and mooted. The national policy of eradicating the discrimination which plaintiffs allege compels the state courts to pass on these questions as well as the federal courts. See *Phipps, supra*; Kimmey v. Burkheimer,

state court nor have they protested their assessments to the Board of Assessments. Had such attempts been made and proved to be ineffective, this case might be entirely different. See Spector Motor Service, Inc. v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1951).

11. By order, March 31, 1975, Judge Newcomer denied an injunction against taxes allegedly levied without equalization of assessment ratios.

376 F.Supp. 49 (E.D.Pa.1974); Huffman v. Pursue, Ltd., —— U.S. ——, 95 S.Ct. 1200, 43 L.Ed.2d 482 [12]. We conclude, as did Judge Higginbotham in *Kimmey*:

> " * * * Comity requires a recognition by a federal Court of the integral significance of a tax collection scheme utilized by a state and its interrelationship with the overall fiscal system of that state or its political subdivision." 376 F.Supp. 57.

For the foregoing reasons, we shall enter an order dismissing the complaint.

12. In *Huffman*, the Supreme Court remanded a civil case to allow the district court to determine whether the mandates of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed. 2d 669 (1971) had been met so as to justify federal interference with the state appellate process. The Court stated:

> " * * * [W]e are of the opinion that the considerations of comity and federalism which underlie *Younger* permit no truncation of the exhaustion requirement merely because the losing party in the state court of general jurisdiction believes that his chances of success on appeal are not auspicious. Appellee obviously believes itself possessed of a viable federal claim, else it would not so assiduously seek to litigate in the District Court. Yet, Art. VI of the Constitution declares that 'the Judges in every State shall be bound' by the Federal Constitution, laws and treaties. *Appellee is in truth urging us to base a rule on the assumption that state judges will not be faithful to their constitutional responsibilities. This we refuse to do.*" [emphasis added]. —— U.S. ——, 95 S.Ct. 1211.